## HARTFORD LIFE INS. CO. v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit. June 28, 1920.)

No. 5447.

1. Courts ⬬508(3)—Federal court without jurisdiction to enjoin enforcement of state judgment for errors committed on trial.

A federal court is without jurisdiction to enjoin enforcement of a judgment of a state court for errors committed in the trial of the cause in construing the statute of another state, not affecting the validity of such statute.

2. Judgment ⬬498—Judgment of court erroneously sustaining jurisdiction not subject to collateral attack.

Jurisdiction of the subject-matter of a suit depends on allegations, and not on facts, and even if a court sustains its jurisdiction erroneously, when put in issue, its judgment is not subject to collateral attack, unless want of jurisdiction is shown on its face.

3. Judgment ⬬489—Not subject to collateral attack because of subsequent adjudication.

That subsequent to a judgment of a state court against a corporation of another state the courts of the latter state so construed the charter of the corporation that an action such as that in which the judgment was rendered could only be brought in the courts of that state *held* not to render the judgment subject to collateral attack, nor its enforcement unconscionable, since adjudication was not necessary to enable defendant to set up the defense, but it did not do so.

4. Courts ⬬2—"Jurisdiction" defined.

Jurisdiction is the power to hear and determine the subject-matter in controversy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Jurisdiction.]

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit in equity by the Hartford Life Insurance Company against Garland S. Johnson, administrator of the estate of Nannie M. Johnson,

⬬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

deceased. From our order dissolving a temporary restraining order and denying a preliminary injunction, complainant appeals. Affirmed.

James C. Jones, of St. Louis, Mo. (Jones, Hocker, Sullivan & Angert, of St. Louis, Mo., on the brief), for appellant.

Peyton A. Parks, of Clinton, Mo., and M. A. Fyke, of Kansas City, Mo., for appellee.

Before HOOK and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. This is an appeal from an order dissolving a temporary restraining order and denying a temporary injunction to enjoin the appellee from enforcing a judgment of the circuit court of Henry county, Mo., affirmed by the Supreme Court of that state (271 Mo. 562, 197 S. W. 132), in favor of appellee's intestate against the appellant. The hearing was on the complaint and exhibits thereto. For convenience the parties will be referred to as they appear in the court below; the appellant as plaintiff, and the appellee as defendant.

The complaint alleges that the defendant was engaged in the business of life insurance under the assessment and mutual or co-operative plan, maintaining and operating a department of said insurance business known and designated as "Men's Division of the Safety Fund Department," organized and existing under the laws of the state of Connecticut, having its domicile in that state. The members of this department, and Johnson was one of them, were issued certificates of membership like unto policies of life insurance. The certificates of membership were conditioned on the payment of quarterly assessments, and provided a mortuary fund, from which death claims are to be paid; a safety fund is also provided for, which becomes available for equal distribution to all the members, if the mortuary fund is found to be insufficient to pay the death claims. This fund is accumulated out of one payment made by each member equal to $10 per thousand of the death claim payable to him. Whenever the fund shall amount to $1,000,000, the subsequent premiums therefor shall be divided by said company among all the holders of certificates in force, who shall have contributed, five years prior to the date of such division, their stipulated proportion of said fund, by applying the same to the payment of their future dues and assessments. The members were required to pay $30 per annum on each $1,000 indemnity, and to pay, within 30 days from the date on which notice bears date, all mortality calls at the home office of the company in Connecticut, and upon failure to do so the certificate shall be null and void. The insurance company was the trustee of the mortuary fund, which was maintained in the state of Connecticut. On or about May 2, 1902, the plaintiff levied a mortuary assessment upon the members of said division, including the assured, Johnson. The amount payable by him upon this assessment was $74.55. This assessment was designated as quarterly assessment call No. 95, but this assessment was never paid. On or about October 19, 1906, one Chas. H. Dresser, and various other members of said division, residing in various states, filed

their bill, in behalf of themselves and all other members of said division, in the superior court of New Haven, in the state of Connecticut, to which action the said Johnson was by representation a party complainant.

In said bill the members of said division complained that various and sundry prior assessments and calls, including quarterly call No. 95, were illegal and excessive, and were not properly levied and demanded by the plaintiff; that the company had no right to maintain a mortuary fund and to assess the members to replenish it, but could only make such assessments when death losses occurred, and when there were no moneys in the mortuary fund, or not enough to meet accrued outstanding death losses; that on July 10, 1907, the said James B. Johnson died, and said Nannie N. Johnson, who was a citizen of the state of Missouri, instituted her action against this plaintiff in the circuit court of Henry county, Mo., seeking recovery of the sum of $5,000, the face of the policy of which she was the beneficiary; that in that cause the plaintiff in its answer asserted, among other things, that by reason of the terms of said certificate the membership of the said James B. Johnson was forfeited, by reason of his failure to pay the quarterly call No. 95. On May 12, 1909, the cause was heard upon that issue, and upon a trial to a jury a verdict rendered in favor of Mrs. Johnson for the full amount of the policy. On March 23, 1910, the Dresser suit, pending in the superior court of New Haven county, in the state of Connecticut, came on to be finally heard, and it was there adjudged and decreed that the prior assessments made by the company for mortuary purposes, including quarterly call No. 95, had been legally and properly made, and not in any excessive amounts; that the plaintiff had a right under the charter to maintain the surplus which it was then maintaining in the mortuary fund, and to levy mortuary assessments upon members of the division to replenish the same; that at no time had the safety fund been in excess of $1,000,000, and that therefore members of the division had no right to insist that the company resort to it in reduction or discharge of their mortuary assessments; that said judgment is now in full force and effect; that the judgment of the circuit court of Henry county, Mo., in favor of Nannie N. Johnson, was appealed to the Kansas City Court of Appeals, and afterwards to the Supreme Court of Missouri; that this plaintiff exhibited to said court a certified copy of the record and proceedings of the superior court of New Haven county, state of Connecticut, rendered after the judgment of the circuit court of Henry county, Mo., as being res adjudicata and a final conclusive determination of the rights of said Nannie N. Johnson, and that court refused to notice or consider the same, because, under the law and practice on appeals pending in the Supreme Court of Missouri, matters not appearing in the record of the lower court, but transpiring subsequently, could not be brought into the record of the appeal, and thereupon affirmed the judgment of the circuit court.

It is then claimed that, unless the court shall interfere by granting the injunction to restrain the defendant from issuing execution on the judgment of the Supreme Court of Missouri, great injustice will be done to the plaintiff. Copies of the certificate of insurance

on the life of Mr. Johnson, of the record in the suit by Nannie N. Johnson against the plaintiff in the circuit court of Henry county, and an exemplified copy of the Dresser suit before the superior court of New Haven county, Conn., against the plaintiff, and the decree of the court in that case, together with the opinions of the judges, were filed as exhibits.

[1] That a court of the United States, by virtue of its general equity powers, has jurisdiction to enjoin the enforcement of a judgment of a state court, if there is a diversity of citizenship, or a federal question involved, and the amount involved exceeds $3,000, if the allegations in the complaint state a proper cause of action, is beyond doubt. But this does not authorize such a court to enjoin the judgment for errors committed in the trial of a cause, in construing a statute of another state, not affecting the validity of such statute. Johnson v. New York Life Ins. Co., 187 U. S. 491, 496, 23 Sup. Ct. 194, 47 L. Ed. 273; Finney v. Guy, 189 U. S. 335, 340, 23 Sup. Ct. 558, 47 L. Ed. 839; Allen v. Alleghany Co., 196 U. S. 458, 463, 25 Sup. Ct. 311, 49 L. Ed. 551; Western Indemnity Co. v. Rupp, 235 U. S. 261, 275, 35 Sup. Ct. 37, 59 L. Ed. 220.

[2] It is claimed in behalf of the plaintiff that the circuit court of Henry county was without jurisdiction to hear that action, by reason of the fact that by the construction of the charter of the plaintiff by the superior court of New Haven county, Conn., the certificate of insurance was payable only out of the mortuary fund, which was kept in the state of Connecticut, and an action could only be maintained in a court of that state. The argument of counsel was ingenious, but not convincing. The jurisdiction of the Missouri court of the person of the plaintiff is undisputed, as it was not only served with proper process in the state of Missouri, but entered its appearance and litigated the action. Nor can there be any doubt that the court had jurisdiction of the subject-matter. The jurisdiction of the subject-matter of a court depends on allegations and not on facts. United States v. Arredondo, 31 U. S. (6 Pet.) 691, 709, 8 L. Ed. 547; Evers v. Watson, 156 U. S. 527, 532, 15 Sup. Ct. 430, 39 L. Ed. 520; In re Lennon, 166 U. S. 548, 553, 17 Sup. Ct. 658, 41 L. Ed. 1110; Flanders v. Coleman, 250 U. S. 223, 227, 39 Sup. Ct. 472, 63 L. Ed. 948; In re First National Bank, 152 Fed. 64, 69, 81 C. C. A. 260, 11 Ann. Cas. 355; Van Fleet on Collateral Attack, § 60. In the Arredondo Case it was held:

"The power to hear and determine a cause is jurisdiction; it is 'coram judice,' whenever a case is presented which brings this power into action; if the petitioner states such a case in this petition, that on a demurrer, the court would render judgment in his favor, it is an undoubted case of jurisdiction; whether on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case, is the exercise of jurisdiction conferred by the filing of a petition containing all the requisites and in the manner prescribed by law."

In Re First National Bank this court said:

"Jurisdiction of the subject-matter and of the parties is the right to hear and determine the suit or proceeding in favor of or against the respective parties to it. The facts essential to invoke this jurisdiction differ materially from those essential to constitute a good cause of action for the relief sought.

A defective petition in bankruptcy, or an insufficient complaint at law, accompanied by proper service of process upon the defendants, gives jurisdiction to the court to determine the questions involved in the suit, although it may not contain averments which entitled the complainant to any relief; and it may be the duty of the court to determine either the question of its jurisdiction or the merits of the controversy against the petitioner or plaintiff. Facts indispensable to a favorable adjudication or decree include all those requisite to state a good cause of action, and they comprehend many that are not essential to the jurisdiction of the suit or proceeding."

It is the power to hear and determine the subject-matter in controversy which constitutes jurisdiction. Rhode Island v. Massachusetts, 37 U. S. (12 Pet.) 657, 718, 9 L. Ed. 1233; Riggs v. Johnson County, 73 U. S. (6 Wall.) 169, 187, 18 L. Ed. 768; Foltz v. St. Louis, etc., Ry. Co., 60 Fed. 316, 8 C. C. A. 635. It does not depend upon the decision of the case. Columbus Ry., Light & Power Co. v. Columbus, 249 U. S. 399, 406, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648.

It is true the jurisdictional allegations of a complaint may be put in issue by proper plea, but even in such a case the court in deciding such a plea exercises jurisdiction. Even if it sustains its jurisdiction erroneously, the judgment is not subject to collateral attack, although cause for reversal upon appeal. This, of course, would not apply to a judgment, which shows on its face that in no event could the court exercise jurisdiction. If a probate court, with jurisdiction limited to the administration of the estates of deceased persons, should assume jurisdiction to hear an action in equity to foreclose a mortgage or for specific performance, or a police court, limited to try petty misdemeanors, should try one for a capital offense, such a judgment would be a nullity, and subject to collateral attack.

[3] It is next claimed that the enforcement of the judgment would be inequitable and unconscionable, and a court of equity has jurisdiction to relieve against such a judgment. The contention is that at the time the judgment was rendered in the circuit court of Henry county, Mo., there had been no construction of the plaintiff's charter by a Connecticut court, and therefore could not be pleaded. But this has been foreclosed by the decision of the Supreme Court of Missouri in this cause. 271 Mo. 562, 197 S. W. 132.

It is true that courts of equity will grant relief by enjoining the enforcement of a judgment that is clearly against conscience, and of which the injured party could not have availed himself in the court of law, or the judgment sought to be enjoined had been obtained by fraud, or without jurisdiction of the person or subject-matter, or in a cause in which the defense was purely equitable, and could not, under the practice then prevailing, be pleaded in an action at law. But there is no claim in the case at bar that any fraud had been practiced by the defendant in the action tried in the state court, nor that the court had no jurisdiction of the person of the defendant, and as we hold that the court had jurisdiction of the subject-matter, the only question upon which the plaintiff now relies is that, as the plaintiff's charter had not been construed at the time of the trial of that cause, by a court of the state which had granted it, plaintiff was prevented from pleading that fact. This contention is untenable for several reasons.

The plaintiff could have pleaded that, under the certificate of insurance issued by it and the charter of the company, no action could be maintained on the certificate except in the courts of Connecticut, if that was the law, although not determined by a court of that state. A decision construing a statute does not create the statute. Besides, the cause was tried in the circuit court of Henry county, Mo., on May 12, 1909, and the Dresser suit was then pending in the superior court of New Haven county, Conn., having been instituted, as alleged in the complaint, on October 19, 1906, and as it is claimed on behalf of this plaintiff, and was so held by the Supreme Court in Hartford Life Insurance Co. v. Ibs, 237 U. S. 662, 35 Sup. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765, that it was a class suit, and the decree therein was binding upon all other certificate holders, that fact was sufficient to require the plaintiff herein to plead it, and, having failed to do so, cannot now be heard.

The authorities relied on by counsel for plaintiff do not sustain the contention that upon the allegations of the complaint the enforcement of the judgment would be unconscionable, and therefore should be enjoined. While the language in Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, relied on by the plaintiff, is rather broad, it was clearly obiter, as the only question involved upon that appeal was whether the state court of Louisiana had erred in denying the plaintiff's petition for removal of the cause to a court of the United States. But, even if the other part of the opinion was obiter, it no doubt stated the rule of law correctly upon the facts as they appeared in that case. The judgment, which was sought to be enjoined, had been obtained upon a forged letter alleged to have been written by the defendant's agent, waiving her lien as a lessor. The agent was dead at that time. The defendant did not know that such a letter was in existence, or would be offered in evidence, and, of course, was unable to prove the forgery at the trial. After the rendition of the judgment, the forgery of that letter was discovered; the defendant having exercised due diligence. The bill was promptly filed to set aside the judgment, after the discovery. Upon these facts the court held that, as the defendant in the action at law could not have availed herself of this defense, and the plaintiff was guilty of a fraud, unmixed with any fault or negligence of herself or her agents, a court of equity would be justified in granting relief.

In Humphreys v. Leggett, 50 U. S. (9 How.) 297, 13 L. Ed. 145, the principal case relied on by the plaintiff, the facts were that the plaintiff had instituted an action against the defendants, sureties on the official bond of a sheriff, for an alleged breach of the bond. The cause was heard by the Circuit Court in 1839, and judgment rendered in favor of the defendant. Upon writ of error the Supreme Court reversed the judgment in 1845 (43 U. S. [2 How.] 9, 11 L. Ed. 159), and directed the Circuit Court to enter judgment for the plaintiff against Humphreys, the only surviving defendant. Upon the filing of the mandate in the Circuit Court, Humphreys asked leave to file a plea, in which he stated that in 1840, while the cause was pending in the Supreme Court and before reversal thereof, judgments had been ren-

dered against him as surety on the sheriff's bond for the full amount of the bond, which he was compelled to pay. The Circuit Court refused to admit the filing of this plea, upon the ground that it was its duty to obey the mandate of the Supreme Court, directing it to enter judgment against him. Thereupon Humphreys filed a bill in equity, setting out these facts, and prayed for an injunction against the enforcement of the judgment. On demurrer the bill was dismissed, and an appeal taken to the Supreme Court. The Supreme Court, in reversing the cause, held that, as the laws of the state of Mississippi, in which said bond was executed, limited the liability of sources on an official bond of a sheriff to the amount of the penalty of the bond, when the surety had been compelled to pay the whole amount of his bond before the plaintiff recovered judgment, the surety should have relief against the execution. The court held that, as the defendant could not avail himself of this defense in an action at law, it would be inequitable to permit the successful plaintiff to compel him to pay this judgment.

In Simon v. Southern Ry. Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492, the judgment of the state court against the railway company was enjoined upon the ground that the court rendering the judgment had not obtained jurisdiction of the person of the defendant, who had no knowledge of the pendency of the proceedings until after the rendition of the judgment.

Aside from this, the judgment of the state court in the instant case was based upon a question which was neither in issue nor decided by the superior court of New Haven county, Conn., in the Dresser Case. The only question upon which the plaintiff recovered judgment in the Missouri courts was that assessment No. 95 was not legally made, as the board of directors of the company were the only ones who could make the assessment, and it had not been made by them. Even if the court committed error in so holding, that does not make the judgment void and subject to collateral attack.

Counsel is in error in claiming that the Supreme Court in Hartford Life Insurance Co. v. Barber, 245 U. S. 146, 38 Sup. Ct. 54, 62 L. Ed. 208, held that the Connecticut court had passed on that question. The ground of reversal in that case was that the court erred in excluding the Connecticut decree when offered by the defendant in that case, thereby denying it full faith and credit, to which it was entitled under the provisions of article 4, § 1, of the Constitution of the United States, as had been held in Hartford Life Ins. Co. v. Ibs, 237 U. S. 662, 670, 35 Sup. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765.

Of the charge of the trial court that the charter of the company required assessments to be made by the board of directors the court said:

"The verdicts for the plaintiff hardly could have been rendered, except upon the other ground opened by the instructions, that the assessment was for a larger amount than was necessary to pay death losses up to that time. Upon that ground the verdicts were a matter of course, and we regard the reference to the directors' part in the assessment as a makeweight, which adds nothing to the substantial basis for the decision below."

The ground of reversal in that case was that the court instructed the jury:

"That if there was money on hand in that fund, and unless the defendant had so proved, it could not declare the insurance forfeited on that account."

This instruction, it was held, was in the teeth of the Connecticut construction of the company's charter in the Dresser Case.

The judgment of the court below, dissolving the temporary restraining order and refusing to grant a temporary injunction, was right, and is affirmed.